FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2019 AUG 29 PM 4:53

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-CV-02454-GPG
(To be supplied by the court)

Dorothy Barrett-Taylor, Plaintiff

v.

Vivage Health Care Nursing Home,

_____,

_____, Defendant(s).

(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)

## EMPLOYMENT DISCRIMINATION COMPLAINT

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

## A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Dorothy Barrett-Taylor, P.O. Box 470301, Aurora, CO 80017
(Name and complete mailing address)
P.O. Box 470301 Aurora, CO 80017  (303) 671-0869
(Telephone number and e-mail address)

## B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: Vivage Healthcare Nursing Facility
(Name and complete mailing address)

12136 W. Bayaud Ave, Lakewood, CO 80228
(Telephone number and e-mail address if known)

Defendant 2: _____
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

## C. JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

___ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (employment discrimination on the basis of race, color, religion, sex, or national origin)

✓ Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

___ Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

✓ Other: *(please specify)* Title VII of the Civil Rights Act of 1964 (Retaliation)

2

## ADMINISTRATIVE PROCEDURES

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission or other appropriate administrative agency on _August 17, 2018_ (date) regarding the alleged discriminatory conduct by Defendant(s).

8. Plaintiff received from the Equal Employment Opportunity Commission or other appropriate administrative agency a Notice of Right to Sue the Defendant(s) on _June 6, 2019_ (date). (Please attach to the complaint a copy of the Notice of Right to Sue.)

## NATURE OF THE CASE

9. Defendant has discriminated against Plaintiff because of the following: (please check all that apply)

    \_\_\_\_\_ Race      \_\_\_\_\_ Color      \_\_\_\_\_ Religion

    \_\_\_\_\_ Sex      \_\_\_\_\_ National Origin

    __✓__ Other (please specify) _ADA - FAILURE TO ACCOMMODATE DISABILITY_

10. Defendant has discriminated against Plaintiff because of the following: (please check all that apply)

    \_\_\_\_\_ Failure to hire

    \_\_\_\_\_ Failure to promote

    __✓__ Demotion/discharge from employment

    __✓__ Other (please specify) _RETALIATION_

(Rev. 07/06)                 2-

## D. STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim. If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: <u>FAILURE TO ACCOMMODATE DISABILITY</u>

The conduct complained of in this claim involves the following: *(check all that apply)*

\_\_\_ failure to hire                \_\_\_ different terms and conditions of employment

\_\_\_ failure to promote         ✓ failure to accommodate disability

✓ termination of employment     ✓ retaliation

\_\_\_ other: *(please specify)* _____

---

Defendant's conduct was discriminatory because it was based on the following: *(check all that apply)*

\_\_\_ race          \_\_\_ religion          \_\_\_ national origin          \_\_\_ age

\_\_\_ color         \_\_\_ sex               ✓ disability

Supporting facts:
SEE STATEMENTS OF FACTS

3

CLAIM TWO: _RETALIATION_

The conduct complained of in this claim involves the following: (*check all that apply*)

\_\_\_ failure to hire  \_\_\_ different terms and conditions of employment

\_\_\_ failure to promote  \_\_\_ failure to accommodate disability

_✓_ termination of employment  _✓_ retaliation

\_\_\_ other: (*please specify*) _____

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

\_\_\_ race  \_\_\_ religion  \_\_\_ national origin  \_\_\_ age

\_\_\_ color  \_\_\_ sex  _✓_ disability

Supporting facts:
SEE STATEMENT OF FACTS: CLAIM THREE, WRONGFUL TERMINATION

4

CLAIM TWO:

## SECOND CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
(Please number your paragraphs and attach any necessary additional pages.)

PLEASE SEE: STATEMENT OF FACTS AS ATTACHED

E.  **ADMINISTRATIVE PROCEDURES**

Did you file a charge of discrimination against defendant(s) with the Equal Employment Opportunity Commission or any other federal or state agency? (*check one*)

✓ Yes (***You must attach a copy of the administrative charge to this complaint***)

___ No

Have you received a notice of right to sue? (*check one*)

✓ Yes (***You must attach a copy of the notice of right to sue to this complaint***)

___ No

F.  **REQUEST FOR RELIEF**
*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "F. REQUEST FOR RELIEF."* SEE ATTACHMENTS: STATEMENT OF FACTS

G.  **PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Dorothy Barrett-Taylor*
(Plaintiff's Signature)

*July 28, 2019*
(Date)

(Revised December 2017)

## REQUEST FOR RELIEF

Plaintiff requests the following relief:

PLEASE SEE'S STATEMENT OF FACTS, AS ATTACHED.

Date: Aug 28, 2019

_____
(Plaintiff's Original Signature)

P.O. Box 470301
(Street Address)

Aurora, CO 80017
(City, State, ZIP)

(303) 671-0869
(Telephone Number)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA<br>☒ EEOC | 541-2018-02968 |

Colorado Civil Rights Division ___ and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**Ms. Dorothy Barrett-Taylor** | Home Phone (Incl. Area Code)<br>(303) 671-0869 | Date of Birth<br>1954 |
|---|---|---|
| Street Address<br>1661 North Fraser Court, Aurora, CO 80011 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**VIVAGE QUALITY HEALTH PARTNERS** | No. Employees, Members<br>20+ | Phone No. (Include Area Code)<br>(303) 238-3838 |
|---|---|---|
| Street Address<br>12136 W Bayaud Ave, Lakewood, CO 80228 | | |

RECEIVED
SEP 07 2018
EEOC DENVER FIELD OFFICE

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | Earliest: 08-06-2017  Latest: 10-20-2017<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the above employer in March 2017 as a Receptionist. On or about August 6, 2017, I developed a disability as a result of an injury at work. My physician provided me with several reasonable accommodations, including limitations on my ability to lift or push, and I communicated these restrictions to my employer. However, my employer rejected my accommodations and attempted to force me to perform duties outside of my position that were not consistent with my restrictions. On or about October 4, 2017, I complained of discrimination. On or about October 20, 2017, I was discharged.

I believe that I have been discriminated against based on a disability, within the meaning of the Americans with Disabilities Act of 1990 (ADA), as amended, in violation of the ADA, and in retaliation for engaging in protected activity.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Sep 07, 2018  /s/ Dorothy Barrett-Taylor<br>Date / Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |



AUG 13 2018

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## EEOC DENVER FIELD OFFICE
## CHARGE OF DISCRIMINATION

EEOC Form 5A (October 2017)

For Official Use Only – Charge Number:

| | |
|---|---|
| **Personal Information** | First Name: Dorothy  MI: ___  Last Name: Barrett-Taylor<br>Address: 1661 N. Fraser Ct.  Apt.: ___<br>City: Aurora  County: Adams  State: CO  Zip Code: 80011<br>Phone: (3)671-0869  Home ☐  Work ☐  Cell ☑  Email: ___ |
| **Who do you think discriminated against you?** | Employer ☑  Union ☐  Employment Agency ☐  Other Organization ☐<br>Organization Name: Vivage Quality Health<br>Address: 12136 W. Bayaud Ave, Ste. 200  Suite: ___<br>City: Lakewood  State: CO  Zip Code: 80228  Phone: ___ |
| **Why you think you were discriminated against?** | Race ☐  Color ☐  Religion ☐  Sex ☐  National Origin ☐  Age ☐<br>Disability ☑  Genetic Information ☐  Retaliation ☑  Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | Date of most recent job action you think was discriminatory: Aug 4, 2017 - Oct 19, 2017<br>Also describe briefly each job action you think was discriminatory and when it happened (estimate).<br>Please Review Attachment |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>I declare under penalty of perjury that the above is true and correct.<br>Signature: Dorothy Barrett-Taylor  Date: Aug 13, 2018 |

EEOC Form 161 (1/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Dorothy Barrett-Taylor
1661 North Fraser Court
Aurora, CO 80011

From: Denver Field Office
303 East 17th Avenue
Suite 410
Denver, CO 80203

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No | EEOC Representative | Telephone No |
|---|---|---|
| 541-2018-02968 | Philip Gross, Supervisory Investigator | (303) 866-1318 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC, in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**, or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Amy Burkholder,
Field Office Director

JUN 0 6 2019
*(Date Mailed)*

Enclosure(s)

cc: VIVAGE QUALITY HEALTH PARTNERS

**STATEMENT OF FACTS:**

Vivage Quality Health Partners of Colorado, submitted its five-page Position Statement and attached exhibits A thru I, none of which substantiated its legitimate, non-discriminatory, non-retaliatory defense, for intentionally having my work restrictions removed just to deny me reasonable accommodations, and for terminating my employment, as a pretext to make sure I never complain again. Nor, by the way, is it possible for Vivage to prevail on the credibility of its defensive argument, considering, its argument posed diametrical contradictions, which it cannot prove false irrefutable evidence omitted from my personnel file, as such:

- Revised job description dated 9/7/2017
- Dictations from Jimmie Keller re: a phone call to remove restrictions on 9/8/2017
- Dictations re: Keller reinstated restrictions dated 9/13/2017
- Notice of Decision from the Dept. of Labor re: Termination of Employment
- Personnel Change Form re: Termination of Employment dated 10/4/2017
- Dictations re: Vivage had my work restrictions removed

**First Claim – Failure To Provide Accommodation:** Despite Vivage's reckless disregard for its own policies and the Americans with Disabilities Act, it categorically denied all wrong doings, and argued defensively throughout its Position Statement in the attempt to bring ambiguity to its unambiguous argument, that, on October 4, 2017, it had offered me accommodations for the injuries, in which I sustained on August 4, 2017. As a matter of law; however, it offered no meritorious facts or legal justifications to the contrary. As such, Vivage asserted, ***"On October 3, 2017, Trujillo met with Charging Party and informed her of the proposed accommodation that would allow her to take dining room orders...by setting a bedside table and chair in the dining room."*** Hypothetically, Vivage had offered me accommodations; first and foremost, it cannot deny the fact that at its own admission, the alleged offer was not until October 3, 2017, more than 8-weeks later. In which by the way, happened to be the day it terminated my employment. Secondly, Vivage failed to produce the evidence such as a written plan of action, in order to determine if the offer met my healthcare provider's approval. In fact, in Vivage's exhibit - G, Bower responded to Trujillo's e-mail dated August 26th, regarding my work restrictions. Bower responded, ***"If they are not supported by her doctor (you may have to confirm with her doctor once she gives you her concerns), then make sure she knows this will be an expectation of her performing her job."*** Notice, Trujillo was instructed to confirm the alleged offer of accommodation with my doctor and me, however, she failed to do so, based on the fact, that neither my healthcare provider nor I were informed of such an offer. *(Exhibit A – Email re: Alleged Offer of Accommodation)*

Vivage cannot possibly deny the fact that from August 4, 2017, to August 26, 2017, it refused to report my injuries as a means to deny me medical attention. Nor, by the way, can Vivage deny the fact that it acted with predatory intentions to contact the medical center when I was receiving treatment and convinced another healthcare provider who had not met or examined me at that time, to remove my work restrictions, as a pretext to deny me accommodations. *(Exhibit B - Emails re: Refusal to Report Injuries)*

Nevertheless, Vivage adamantly denies all wrong doings arguing, *"Charging Party accused Trujillo of "forcing" her doctor to change her restrictions, however, Trujillo explained their need for clarification regarding a 0-pound weightlifting restriction."* However, the dichotomy of Vivage's fallacious argument is that Vivage knew Jordan Mass, PA-C, has always been my treating healthcare provider, and from September 1, 2017, to September 24, 2017, the maximum weightlifting restriction was 5-pounds. However, on September 25th, Mass inadvertently typed 0-pound lifting, but, after Julie Trujillo-Supervisor, requested clarifications, Mass corrected the typo to reflect a maximum 5-pounds lifting, and dictated in the chart; *"Restrictions amended yet again to remove specific restrictions of work duties and were made more general."* (Exhibit C - Mass's Work Restrictions / Clarification)

The request for clarification is understandable; however, Vivage is attempting to rationalize its self-incriminating assertions. As such, on September 25th, it contacted the medical center again on September 25th, after having my work restrictions removed. Prior to, on September 8th, rather follow the instructions outlined on the Physician Work Activity Status Sheet, that specifically stated, *"Your employee has been informed that the activity prescription is expected to be followed at work..."* and/or speak directly with Mass for any concern, Dana Bower- Compliance Officer, and Trujillo convinced Jimmie Keller, PA-C, to remove my restrictions so that I could perform all cafeteria duties that I was asked to do; walking, squatting, kneeling, pushing wheelchair patients weighing 200 to 300 pounds, and pulling heavy-duty steel food carts without restrictions. When in fact, they knew full well that Keller had never examined me at that time to determine the extent of my injuries or physical capabilities. Nevertheless, Keller unhesitatingly complied and dictated in my medical chart on September 8, 2017, *"Dorothy may take meal orders for residents & walk up to an hour total in completing these tasks."* Trujillo and Bower's scheme was to undermine Mass's diagnoses and treatment of plan, as a pretext to deny reasonable accommodations. However, she put me at risk for further injuries, due to food and liquid spills on the cafeteria floor. (Exhibit D - Keller Removed Restrictions)

Vivage's continual denial is contradicted; not only by Keller's dictations but the mere fact that Mass questioned Keller's unethical decision stating, *"She states that her employer told her that a male doctor amended the restrictions to require her to work dining room duties. This was clarified with Jim Keller, PA, the only provider that has seen her other than me, who denies such a statement, although he did amend her restrictions...."* (See Exhibit C - Page 2 of 4)

### Second Claim – Retaliation:
**Constructive Termination:** Irrefutable evidence proved I was, in fact, terminated; nevertheless, Vivage insists: *"Charging Party walked off the job, voluntarily terminating her employment with Vivage."* Hypothetically, such an assertion was factual, by which Vivage cannot possibly prove; in all actuality, Colorado's employment law cites, an employee is not obligated to work in a hostile environment. While the facts establishing constructive discharge may appear circumstantial, irrefutable evidence proves that the constant harassment by which I was forced to endure, became increasingly overwhelming; mentally and physically. As such, on October 4th, Trujillo, and Nicole Kent-Human Resources Manager, came to my desk in the reception area 15-minutes after the start of my shift, outraged, because I was not working in the cafeteria. The two verbally reprimanded me for over 15-minutes in an unprofessional and irate tone that drew the attention of visitors, patients, and co-workers, as Trujillo pointed her finger toward the cafeteria shouting, *"I am ordering you to work the cafeteria now!"*

Page **2** of **7**

This type of verbal abuse of authority just heightened the situation, leaving me no other alternative except to walk off the job. Nonetheless, Vivage defends its argument that walking off the job constitutes job abandonment. However, it lacks evidence such as a company policy to substantiate its claim. Hypothetically, such a policy existed, the evidence proves, I was forced to work in a hostile environment that was not conducive to my health or job performance, by which state and federal laws would consider a constructive resignation. But, the mere fact that Vivage's own Human Resources Director, Susan Coulter had contacted me on October 20, 2017, with the findings of the investigation that I had requested, stated, *"You were terminated because you could not perform the essential functions of cafeteria duties due to your injuries and for walking off the job."*
*(Exhibit E – Coulter's Phone Recording)*

Coulter's account of my job separation is consistent with irrefutable evidence, as follows:
- Notice of Decision from the Colorado Department of Labor & Unemployment states, *"Based on the information received, our investigation has determined that you were separated from this employment because you were physically unable to perform the work."*
*(Exhibit F – Notice of Decision)*

- Vivage's own "Personnel Change Notice" form dated 10/4/2017, shows an effective termination date of 9/1/2017: "Termination - code/Reason - V-7 Job Abandonment-NR." Coincidentally, the term job abandonment is undefined and not found in the Employee's Handbook anywhere. Therefore, it is impossible for Vivage to survive its defensive argument, since walking off the job and/or job abandonment constitute neither voluntary resignation nor termination.
*(Exhibit G- Personnel Change Notice Forms)*

- My credit card "Employer's Statement / Involuntary Insurance" form was completed by Kent, HR Manager on 11/10/2017, and by Keith Englade, Nursing Home Director, on 9/13/2018, in which both forms states I was terminated on 10/19/2017. *(Exhibit H – Involuntary Insurance Forms)*

From the start, Vivage essentially refused to report my injuries, as a pretext to deny me Workers' Compensation. Ironically, after receiving notice of my work restrictions on September 7th, Trujillo intentionally revised my receptionist job description for the first time after 8-months on the job as a pretext to execute her thought-out scheme. As such, based on my work restrictions, Trujillo knew I was not capable of meeting such requirements, and therefore, a Personnel Change Form was created effective September 1, 2017, with the intent to terminate my position, because the criteria for a Cafeteria Aide required a "Mental & Physical examination," as such: *"__Must meet the general health requirements set forth by the policies of this facility, which include a mental and physical examination...__"* *"Must be able to push, pull, move, and/or lift a minimum of 5 pounds to a minimum height of 5 feet and be able to push, pull move, and/or carry such weight a minimum distance of 50 feet."* *(Exhibit I –Personnel Change Form / Original & Revised Job Descriptions)*

Vivage did not, and consequently, it cannot possibly produce evidence of such a policy, on the basis of fabrication. In fact, prior to Vivage's trumped-up job description, it hired two Dietary Aides (aka) Cafeteria Aides in September of 2017, by which the job never mentioned a *"__mental and physical examination.__"* In fact, the duties totally differ in comparison to the revised job description. Ironically, after the new hired Cafeteria Aides started the job, Vivage reneged on its word to relieve me from these extra duties, however, all other volunteers were relieved. But then again, the cafeteria duties are completely minute in comparison to the revised job description. *(Exhibit J – New Job Descriptions)*

Page 3 of 7

All the same, Vivage takes the position that: *"the cafeteria duties have always been part of Charging Party's duties for the evening receptionist."* What's ironic, is the fact that although Trujillo was never the cafeteria supervisor, she circumvented the roles of Jeanne Fong, who was currently the Cafeteria Supervisor, after receiving notice of my work restrictions, by sending an e-mail on September 7, 2017, instructing both Elva Spencer- morning receptionist and me to print and sign the revised job description. The fact that Vivage intentionally failed to mention both the "Personnel Change Notice" dated 9/18/2017, discovered in my personnel file nearly one year after my termination, and, the revised job description in its Position Statement, gives rise to the fact that it has something to hide. As such, the Personnel Change Notice referenced a change in my job title as a Dietary Aide, effective 9/16/2017, and Fong was to be my new supervisor. Vivage offered no meritorious facts or legal explanation why Spencer was also instructed to sign the revised job description when in fact, she has always been the morning receptionist, and; if in fact, the cafeteria duties have always been the duties for the *"evening receptionist."* (Exhibit K – Personnel Change Notice)

The only logical explanation that I can ascertain; is the fact that Trujillo also sent Spencer the same e-mail, perhaps, to substantiate her claim that my complaints of racial disparity lacked merit. As such, in retrospect to Spencer's on-the-job injury some 25 years ago when she was a Nurse's Aide, Spencer accepted an out of court settlement for an undisclosed amount and a "lifetime" job as a full-time receptionist for the morning shift. In which by the way; explains, that on August 18, 2017, during Vivage's four-star dinner celebration, Spencer claimed she was to work overtime to assist me in the cafeteria. However, I complained because Spencer, Trujillo, and Myra-Nursing Home Director, attended the celebration and they all sat at the same table, yet, Spencer was not asked to help me. Instead, I worked the cafeteria alone, limping in excruciating pain for the duration of my entire 3-hour shift without a break. I also complained that Spencer's lifetime offers of accommodations entailed: no patient contact; no lifting; no pulling; no pushing, was still being honored after more than 25 years and given precedence over my existing injuries. In that, despite my excruciating pain, I was harshly reprimanded because I was not able to continue performing these strenuous duties that were outside of my job description, to begin with, in which by the way, differ from the recently posted evening receptionist job. (Exhibit L - New Receptionist Job Description)

Vivage first learned of my on-the-job injuries on August 6th, yet, it is quite obvious I was not offered accommodation, as such: *"On September 5, 2017, Trujillo noticed that Charging Party was not helping in the dining room and, when Trujillo inquired, Charging Party very rudely told her that, due to her injury, she did not have to help in the dining room."* Vivage's rationales posed diametric contradictions throughout its Position Statement, which proves that its materially adverse employment action was to deem me *"physically incapable"* of performing the duties of a Cafeteria Aide, as a pretext to deny me accommodations, and subsequently to terminate my position.
(Exhibit M - E-mail re: Nicole Kent demands of cafeteria duties)

With that being said, I respectfully request a thorough and fair investigation, and in granting such request, may the evidence be meticulously examined in accordance with EEOC's Enforcement Guidance laws and statutes, as cited: *"The credibility of the employer's explanation is key and must be judged in light of all the evidence obtained during the investigation," The investigator must look at the totality of the evidence to determine if there is a reason to believe the employer acted in a racially motivated manner." "The employer's credibility will be undermined if its explanation is unsupported by or contrary to <u>the balance of the facts</u>."*

Page **4** of **7**

**Balance of The Facts**:
Upon hire in March 2017, I accepted the terms and conditions of a part-time Receptionist for the evening shift with Genesis. In June of 2017, Vivage became the new owner, and my pay rate, work hours, and job description specific to receptionist duties only, remained unchanged. However, late in June of 2017, I along with several other employees from various departments agreed to help in the cafeteria temporarily due to short staff, until a permanent Cafeteria Aide was hired. Vivage implements anti-discriminatory policies, specifically, as it relates to the Americans with Disabilities, stating, *"The Community will make reasonable accommodation for qualified individuals with known disabilities."*
*(Exhibit N - Employee Handbook)   (See Exhibit Q – Calendar Schedule re: Cafeteria Duties)*

**Protected Opposition**: Contrary to its policy, I complained repeatedly about being denied accommodations to my known injuries, in which I sustained as a result of Vivage's gross OSHA violation; to have electrical wires and cable cords wrapped around my desk and taped to the floor. Even in my dire need for medical attention, Vivage refused to report my injuries, stating it was *"too late,"* in opposition to the language stipulated in its policy. Consequently, I was forced to perform strenuous duties outside of my job description. For instance, while in the cafeteria, I was expected to rush back and forth to my desk to catch incoming calls, greet visitors, facilitate visitor tours, etc., simultaneously. Contrary to the assertion that these duties only took 30-minutes, on Monday thru Thursday, my work schedule was 5:00 PM to 8:00 PM, and the cafeteria duties took anywhere from one to two hours of my 3-hour shift. On Fridays and Saturdays, I worked a full shift, assisting in the cafeteria for lunch and dinner. The evidence proved, I had complained numerous times to Myra, Nursing Home Director prior to my injuries, about working to the cafeteria alone   *(Exhibit O - E-mails re: Myra's Notes)*

Despite the fact that all Vivage officials were fully aware of my excruciating pain that radiated from my injured hip down to my leg upon walking, squatting, kneeling, pushing wheelchair patients weighing 200 to 300 pounds, and pulling heavy-duty steel food carts, I was still denied accommodations. After complaining to Bower, Compliance Officer, my injuries were forcibly reported, and I started medical treatment on August 26, 2017. However, in the meeting of September 8, 2017, Kent, and Trujillo diverted attention from the true narrative of my complaints with false characterizations of my work ethics, and I was harshly reprimanded and harassed for not working in the cafeteria, and, for refusing to sign the revised job description. Also, in the meeting, Bower boldly admitted: *"we need you to work in the cafeteria regularly, so I contacted your doctor-Jim Keller today about your work restrictions and he removed them. So now you are expected to work in the cafeteria as of today."* I alerted Bower of the fact that she admittedly interfered with my work restrictions, which violates state and federal labor laws.

**Consciousness of Guilt**: The Court should not ignore critical facts, as such; Vivage admittedly insisted, *"On September 8, 2017, Trujillo, in the presence of Human Resource Manager Dina Bower and Nicole Kent, met with Charging Party to discuss her performance and to <u>address both her and Vivage's concerns</u>. During the three-hour mediation meeting, Trujillo issued Charging Party documented verbal counseling regarding her absences and unprofessional behavior."* Vivage's thought out scheme to change the narratives of my complaints, is an admission of guilt. First and foremost, the term mediation is to resolve a dispute by negotiation or compromise, which Vivage failed to do. Secondly, its statement is blatantly incriminating to admit that the meeting lasted 3-hours, yet there was no documented discussion of its alleged proposed offer of accommodation or a legal explanation of why it deemed it necessary to end my work restrictions. Instead, Vivage inadvertently admitted to the fact that none of my concerns were addressed, however, I was written up for the alleged *"absences and unprofessional behavior."*

Page 5 of 7

Vivage's credibility is further damaged as asserted: *"On September 26, 2017, Charging Party provided another updated medical report from a <u>different medical provider</u> stating that Charging Party now had a 0-pound weightlifting restriction."* Again, these false allegations were meant to attack my credibility. Instead, it undermines Vivage's credibility, on the basis that it was fully aware that Mass had always been my primary provider, and other than her, Keller had only examined me once on September 13th, at the request of Bower and Trujillo. Even Keller affirmed in my visit with him that Bower had, in fact, asked him to examine me only to validate the removal of the restrictions.

However, after I reminded Keller that his decision was unethical according to the Colorado Medical Board of Unethical Behavior would address, and he immediately reinstated the restrictions in more details, stating, *"Seated receptionist duties only. No taking meal orders from or serving residents."*
*(See Exhibit P – Keller Reinstated Restriction)*

Vivage insisted: *"Charging Party accused Trujillo of "forcing" her doctor to change her restrictions, however, Trujillo explained their need for clarification regarding a 0-pound weightlifting restriction."* Contrary to its assertions, Keller's dictations of September 8, 2017, states, *"Dorothy may take meal orders for residents & walk up to an hour total in completing these tasks."* On September 13, 2017, Keller stated, specifically, *"I received a call from her employer <u>about those extra duties</u> ...obviously, not good for her to continue for now due to increased R hip pain..."* Again, Vivage's defensive argument is immaterial on the basis that Keller never mentioned anything about the 0-pound weight because it was not a topic for discussion until September 25th. *(Exhibit Q – Keller Phone Call)*

Vivage further asserts: *"Charging Party's healthcare provider confirmed that Charging Party could sit and take dining room orders, as Trujillo proposed."* First and foremost, neither Keller nor Mass could have said that, because, Keller's restrictions specifically stated, *"Seated receptionist duties only"* which Mass approved. Secondly, keep in mind, October 4th, was the day that Vivage accused me of resigning my position. Other than that, there was no other dictation from Keller nor Mass that collaborated such an assertion. Here what substantively matters is the fact that the dichotomy of Vivage's defensive argument in its totality was pretextual; in the attempt to divert attention away from the true narratives of my complaints, attack my work ethics as lackadaisical, and my character as unprofessional. However, the fact is, I worked the cafeteria 6-days a week, simultaneously, with my assigned duties without a single complaint, prior to my injuries. Even after my injuries were forcibly reported, I was constantly harassed by all Vivage officials even at the corporate level, because, for the most part, I was no longer able to perform all cafeteria duties without pain. Vivage's assertion that these extra duties were always part of my job description, was pretextual just to deny me accommodations.
*(Exhibit R– Harassing E-mail re: Revised Job Description)*

In fact, the calendar submitted into exhibits proved; employees from other departments also assisted in the cafeteria due to short staff. As such, Rebecca is the Admission Director, Grace works in the laundry room, Nicole is the Human Resources Manager, and Doug is the assistant housekeeper supervisor, etc. If the cafeteria duties have always been part of my job and/or the duties of the *"evening receptionist,"* as Vivage maintained, I find it oddly strange that after 8-months on the job, I was not scheduled on the calendar; especially in light of the fact that I worked every Saturday. Nor, by the way, is Spencer's name listed, although she too was instructed to print and sign the revised job description *(Exhibit S – Calendar)*

Page **6** of **7**

### Claim Three: Adverse Action / Wrongfully Termination:
Vivage has no legal defense for intentionally interfering with my work restrictions, and for refusing to provide accommodations to my known injuries. Yet, it deemed me incapable of performing these strenuous duties that were never included in my job description, to begin with. Subsequently, it terminated my employment to make sure I will never complain again.

### REQUEST FOR RELIEF:

- I respectfully request a thorough and fair investigation, and in granting such request, may the evidence be meticulously examined in accordance with EEOC's Enforcement Guidance laws and statutes, as cited: *"The credibility of the employer's explanation is key and must be judged in light of all the evidence obtained during the investigation," The investigator must look at the totality of the evidence to determine if there is a reason to believe the employer acted in a racially motivated manner." "The employer's credibility will be undermined if its explanation is unsupported by or contrary to <u>the balance of the facts</u>."*

- To see that Vivage Health Care Nursing Facility is held accountable to the same standards of the law for its Intentional Infliction of Emotional Distress, by which is indicative of; federal violations on the face of Title VII Civil Rights Acts of 1964 as it relates to retaliation, and, Title VII of the Americans with Disabilities Act- failure to provide accommodation.

- Jury trial

- Lost Wages

- Compensation / Punitive damages in the amount awarded by the court

Page **7** of **7**